UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIAN HOWARD,

    Plaintiff,

-vs-                                        CASE NO.:

NISSAN MOTOR ACCEPTANCE
CORPORATION,

    Defendant.
_____/

## COMPLAINT

    COMES NOW the Plaintiff, BRIAN HOWARD, by and through undersigned counsel, and hereby sues the Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION, and in support thereof respectfully alleges the following:

1.    Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2.    The TCPA was enacted to prevent companies like NISSAN MOTOR ACCEPTANCE CORPORATION from invading American citizen's privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the

wall."' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).  See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. Venue is proper in this District because the Plaintiff resides in this District (Northern District of Georgia), the phone calls were received in this District, and the Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

10. Plaintiff BRIAN HOWARD is a natural person, and citizen of the State of Georgia, residing in Gwinnett County, and resides in this District.

11. Defendant NISSAN MOTOR ACCEPTANCE CORPORATION ("NMAC") is a California corporation with its principal place of business and/or office for transacting its business located at One Nissan Way, A5C, Franklin, Tennessee 37067.

12. Defendant NMAC regularly conducts business in the State of Georgia and its Registered Agent is located at LexisNexis Document Solutions, Inc., 40 Technology Parkway South, Suite 300, Gwinnett, Norcross, Georgia 30092.

13. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, by the Defendant's placing of illegal calls to Plaintiff while he resided in the State of Georgia.

14. Defendant, at all material times, was attempting to collect on a consumer debt (hereinafter the "subject account"), which was issued and serviced by Defendant.

15. In approximately October of 2014, Defendant began a campaign of telephone harassment of the Plaintiff by calling Plaintiff's cellular telephone multiple times a day in an effort to collect a debt.

16. On or about October of 2014, Plaintiff told Defendant to stop calling. Plaintiff said, "Stop calling me with your robo caller," or words to that effect. Plaintiff knew it was a robo-dialer because whenever he answered the calls, there was silence and a live person never came on the line. Defendant apologized and said that they "use a computer to do the dialing and sometimes when the robo-dialer makes a call, there are no representatives available to pick up if the customer actually picks up the phone," or words to that effect.

17. Despite Plaintiff's instructions to Defendant to stop calling, Defendant continued to call Plaintiff on his cellular telephone.

18. Approximately one year later, on or about October of 2015, Plaintiff spoke to Defendant's agent named "Karen." Plaintiff again requested that the Defendant cease calling him with a robo-dialer. "Karen" said that the calls would continue until Plaintiff's account was current. The calls continued.

19. On or about November of 2015, Plaintiff spoke with Defendant's agent named "Tiffany." Plaintiff told "Tiffany" that Defendant NMAC was not supposed to be calling him. "Tiffany" became argumentative and Plaintiff hung up the phone on her. The calls continue.

20. Defendant NMAC knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately October of 2014 through the filing of this Complaint with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

21. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received, he heard a silence when he answered his phone, and a live person never came on the line.

22. Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

23. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number since approximately October of 2014 were done so after Plaintiff had revoked consent and without the prior express consent of the Plaintiff.

24. Plaintiff BRIAN HOWARD is the subscriber, regular user and carrier of the cellular telephone number, (678) *** - 8951. Plaintiff was the called party and recipient of Defendant's autodialer calls.

25. The auto-dialer calls from Defendant came from the telephone numbers including but not limited to 1-800-777-6116 and when this number is called, an automated voice answers and identifies itself as "Thank you for calling Nissan Motor Acceptance Corporation and Infinity Financial Services."

26. Despite Plaintiff informing Defendant to stop calling on multiple occasions, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

27. The autodialer calls from Defendant continued, on average, three (3) times a day from approximately October of 2014 through the filing of this Complaint. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiff.

28. The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the cessation of the telephone calls.

29. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls well-beyond October of 2014. For example, between October 14, 2014 and January 11, 2016, Plaintiff received approximately 157 phone calls from Defendant. While

Plaintiff was not able to keep track of every single call, a sampling of the calls that he received from NMAC is attached hereto as Exhibit "A."

30. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individuals, like Plaintiff, advising Defendant to stop calling.

31. Defendant's corporate policy provided no means for the Plaintiff to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

32. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

33. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call people who have revoked consent to be called.

34. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

35. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

## COUNT I
**(Violation of the TCPA)**

36. Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-five (35) above as if fully stated herein.

37. None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38.     Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's express consent.

39.     The Defendant willfully and/or knowingly violated the TCPA, <u>especially</u> for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant on or about October of 2014, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact the Plaintiff, and told Defendant to stop calling the Plaintiff.

40.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION, for statutory damages, punitive damages, actual damages, treble damages, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

        Respectfully submitted,

*/s/ Octavio Gomez*
Octavio Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Georgia Bar #: 617963
Attorney for Plaintiff
TGomez@ForThePeople.com